UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


BRENDA BESS,

        Plaintiff,

v.                             Civil Action No. 2:11-00143

MUTUAL OF OMAHA
INSURANCE COMPANY,

        Defendant.


MEMORANDUM OPINION AND ORDER


        Pending are cross motions for summary judgment filed by plaintiff Brenda Bess and defendant Mutual of Omaha Insurance Company ("Mutual"), each filed on July 28, 2011.


I.


        Plaintiff is a West Virginia resident formerly employed by Wendraven, LLC ("Wendraven") as general manager for a Wendy's restaurant located in Roane County, West Virginia. (Compl. ¶¶ 2-3; Pl's Mem. 1; AR 427).  While an employee at Wendy's, plaintiff was covered under Wendraven's employee benefit plan administered by Mutual, including Mutual's Short Term Disability Plan ("Plan").  (Compl. ¶ 2; Def's Mem. 2).  The parties do not dispute that the Plan qualifies as an employee

benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

A.   Plan Language

       The Plan gives Mutual the sole authority to manage the Plan, and to administer claims and interpret the policy.  (AR 7).  Mutual retains the discretionary authority to determine eligibility for entitlement to benefits.  (Id.).[1]

       The Plan sets forth the short term disability ("STD") benefit as follows:  "If, while insured under this provision, [the claimant] become[s] Disabled due to Injury or Sickness, We will pay the Weekly Benefit shown in the Schedule.  Benefits

---

[1] Under the heading "AUTHORITY TO INTERPRET POLICY," the Plan states:

   By purchasing the policy, the Policyholder grants
   Mutual of Omaha Insurance Company the discretion and
   the final authority to construe and interpret the
   policy.  This means that Mutual has the authority to
   decide all questions of eligibility and all questions
   regarding the amount and payment of any policy
   benefits within the terms of the policy as interpreted
   by Mutual.  In making any decision, Mutual may rely on
   the accuracy and completeness of any information
   furnished by the Policyholder or an insured person.
   Mutual's interpretation of the policy as to the amount
   of benefits and eligibility shall be binding and
   conclusive on all persons.

(AR 7).

2

will begin after [the claimant] satisf[ies] the Elimination Period shown in the Schedule."  (AR 31).  "Disabled" is defined as follows:

> Disability and Disabled means that because of an Injury or Sickness, a significant change in [the claimant's] mental or physical functional capacity has occurred in which [the claimant] [is]:
>
> (a)   prevented from performing at least one of the Material Duties of [the claimant's] Regular Job on a part-time or full-time basis; and
>
> (b)   unable to generate Current Earnings which exceed 99% of [the claimant's] Weekly Earnings due to that same Injury or Sickness.
>
> Disability is determined relative to [the claimant's] ability or inability to work.  It is not determined by the availability of a suitable position with [the claimant's] employer.

(AR 46).  "Sickness" is defined as "a disease, disorder or condition, . . . for which [the claimant] is under the care of a Physician."  (AR 48).  "Material Duties means the essential tasks, functions, and operations related to [claimant's regular job] that cannot be reasonably omitted or modified. . . . One of the material duties of [claimant's regular job] is the ability to work for an employer on a full-time basis."  (AR 47).

The claimant must make a written proof of loss for a claim to be considered under the Plan.  (AR 35).  To that end, the Plan requires the claimant to provide the claims

administrator with a written statement that includes the
following information:

>       (a)   that [the claimant] is under the Regular Care of
>             a Physician;
>
>       (b)   the appropriate documentation of [the claimant's]
>             job duties at [the claimant's] regular job and
>             [the claimant's] regular earnings;
>
>       (c)   the date [the claimant's] Disability began;
>
>       (d)   the cause of [the claimant's] Disability;
>
>       (e)   any restrictions and limitations preventing [the
>             claimant] from performing [the claimant's]
>             regular job;
>
>       (f)   the name and address of any Hospital or
>             institution where [the claimant] received
>             treatment, including attending Physicians.

(Id.).  Benefits are paid by Mutual after it "receive[s]
acceptable proof of loss."  (AR 36).


B.    Background


        Plaintiff is now 43 years of age.[2]  Over the course of
several years, including during her time spent as manager at
Wendy's, plaintiff has complained of and been treated for
multiple problems affecting her abdominal area.  Treatment
included multiple laparotomies, or surgical incisions into the

---

[2] Her medical records indicate that she has smoked one pack
of cigarettes per day for the past 16 years.  (AR 95, 193, 198).

4

abdomen.  She was first treated for cramping and pelvic pain in
the spring of 2008.  (AR 89, 95-96, 109, 120).

In June 2008, plaintiff was diagnosed with an ovarian
cyst.  Also at that time, she had an abdominal hysterectomy and
a right salpingo-oophorectomy.[3]  (AR 92, 137).  That next March,
plaintiff underwent an appendectomy and had the ovarian cyst
removed.  (AR 166, 230, 241).  She continued to complain of
bleeding, nausea, bowl irregularities, and abdominal pain
through 2008 and 2009.  (AR 59, 93, 104, 356-362, 364, 380).  As
a result of both the June 2008 and March 2009 procedures,
plaintiff sought and received STD benefits from Mutual, and
after each absence she returned to her full-time position at
Wendy's.  (AR 135-138, 166, 168-172).

On October 18, 2009, plaintiff was hospitalized after
exhibiting symptoms including "severe abdominal pain, bloating
and nausea."  (AR 429).  The record indicates that over the next
few days, October 19 through 22, plaintiff underwent a partial
hysterectomy, a cholecystectomy,[4] and a second appendectomy. (AR
429, 471).  Plaintiff used company "sick leave" to cover the

---

[3] An "oophorectomy" is the surgical removal of an ovary or
ovaries.

[4] A "cholecystectomy" is the surgical removal of the
gallbladder.

days she missed for the actual surgeries.  (AR 427, 432).  She then sought STD benefits to cover the post-surgery recovery period, which began on October 25.

C.    Plaintiff's Claim for Short Term Disability Benefits

        Around November 25, 2009, plaintiff filed a claim for STD benefits based on symptoms of "severe abd[ominal] pain, bloating [and] nausea."  (AR 429).  At the Wendy's restaurant, plaintiff's management responsibilities involved a strength demand classified as "M – Medium," which means that her job required no more than 50 lbs. of lifting and involved frequent lifting or carrying of up to 25 lbs.  (AR 427).  As part of the claim paperwork, plaintiff submitted an attending physician statement from Dr. James Gaal, an internist and plaintiff's primary physician, indicating that she should be able to return to work either within a month of surgery or after a follow-up visit with her gastroenterologist, Dr. Henry Duncan.  (AR 429).  Plaintiff saw Dr. Duncan on December 30.  (AR 385, 433).

        Consistent with Dr. Gaal's recommendations, Mutual approved plaintiff's STD claim for the period from October 25, 2009 through December 13, 2009.  (AR 411).  Mutual then extended those benefits twice: first, through December 30, 2009, and then again, through January 14, 2010.  (AR 342, 399).  Mutual granted

both extensions as a result of information provided by plaintiff or her physicians indicating that she was undergoing additional follow-up medical treatment during that time frame. (AR 433-436).

As a result of her December 30, 2009 visit with Dr. Duncan, the physician noted that plaintiff's symptoms were "likely due to significant intraabdominal adhesions related to multiple previous abdominal surgeries or possibly due to a functional gastrointestinal disorder such as irritable bowel syndrome." (AR 385). Otherwise, Dr. Duncan concluded that plaintiff had a normal esophagus, stomach, and duodenum, and that "no other abnormalities were present." (AR 374, 384-385).

Similarly, in her visit with Dr. Gaal on December 31, 2009, the physician reported that plaintiff was "not in any acute distress" and had a "pleasant affect." (AR 374). Moreover, Dr. Gaal stated that plaintiff had no neurological deficits, full range of motion of the neck, no tenderness to palpation of the cervical, dorsal, or lumbosacral spine area, and exhibited a normal gait. (AR 374). He recommended that plaintiff seek a "second opinion as far as chronic abdominal pain is concerned." (AR 375). Even so, in a letter to Mutual addressed December 31, 2009, Dr. Gaal reported that "[plaintiff] still has significant dysfunction as far as her activities of

7

daily living are concerned due to her chronic abdominal pains to the point where it will be hard for her to return to her position by January 16, 2010." (AR 393). In its second extension letter, Mutual notified plaintiff that

> [i]f you believe your disability extends beyond January 14, 2010, it will again be necessary that your doctor submit clinical office notes including results of any laboratory tests, x-rays, or other diagnostic tests that have been performed. A written note from your doctor certifying your disability is not sufficient to pay additional benefits beyond your expected recovery period.

(AR 342).

Plaintiff responded by advising Mutual that she was continuing to seek medical treatment for her abdominal pain, and that she did not believe she could return to work. (AR 441). This additional treatment included a referral by Dr. Gaal to Dr. R. Edward Hamrick, who saw plaintiff on January 28, 2010. (AR 321). Dr. Hamrick noted that plaintiff had a negative gastrointestinal workup and doubted that she would benefit from an exploratory laparotomy. (AR 321). He diagnosed plaintiff with idiopathic[5] abdominal pain, and for treatment he recommended that plaintiff consider an appointment at the Cleveland Clinic. (Id.).

---

[5] "Idiopathic" means of unknown cause or spontaneous origin.

After plaintiff provided these records, Mutual, in turn, conducted a review to determine whether any restrictions or limitations were supported for plaintiff through March 9, 2010, the date of plaintiff's next follow-up appointment.  (AR 469-472).[6]  Mutual's medical review was undertaken by Karen Svoboda, RN BSN, on February 23, 2010.  (AR 470).  Despite plaintiff's continued complaints of constant nausea and chronic abdominal pain, Svoboda concluded that "[t]he objective exam results do not preclude the claimant from standing up to 6 h[ours] out of an 8-[hour] work day and lifting up to 50 lbs. per US Dept. of Work [sic] guidelines."  (AR 472).  By its letter of March 10, 2010, Mutual so informed the plaintiff and denied her claim beyond January 14, 2010.  (AR 283).

Nevertheless, plaintiff continued to complain of and seek treatment for abdominal pain from her primary physician, Dr. Gaal.  (AR 246, 249).  In a May 14, 2010 letter from Dr. Gaal to defendant, he indicated that plaintiff is

> currently unable to obtain fruitful employment or even
> partake in any employment as too much sitting, too

---

[6] The records reviewed included (1) upper gastrointestinal endoscopies from December 30, 2009 that showed a normal esophagus, stomach, and duodenum (AR 384-385); (2) a negative objective physical examination on December 31, 2009 (AR 374); and (3) a January 14, 2010 ultrasound that was negative for any acute intra-abdominal abnormality.  (AR 376).

> much standing, lifting, or carrying causes problems
> . . . I consider her currently 100% totally disabled
> from obtaining or maintaining any type of employment
> as a result of these problems and diagnoses which she
> has.

(AR 245).

### 1. First Appeal

Plaintiff promptly appealed Mutual's decision, and as part thereof, submitted additional medical records. Mutual's review was conducted by Nancy Rosenstock, RN BSN, on June 7, 2010. (AR 465).[7] Like Svoboda, Rosenstock reviewed all of plaintiff's available medical records and concluded that the new documents showed no objective evidence to support plaintiff's claimed disability.[8] (AR 464-467). Based on this review, Mutual

---

[7] According to the Plan, and consistent with applicable ERISA regulations, an appeal does not "give deference to the initial Adverse Benefit Determination." (AR 38). Moreover, the appeal is "conducted by an individual who is neither the individual who made the Adverse Benefit Determination that is the subject of the appeal, nor the subordinate of such individual." (AR 39).

[8] These new records included (1) a March 31, 2010 MRI of plaintiff's abdomen that showed "no significant intra-abdominal abnormality," (AR 254); (2) a March 17, 2010 CT scan of her abdomen by the Cleveland Clinic that showed no abdominal or pelvic lymphadenopathy, (AR 261-262); (3) a March 18, 2010, endoscopic examination of the esophagus, stomach, and duodenum by the Cleveland Clinic that was normal, (AR 257-258); (4) a March 18, 2010 colonoscopy that was normal (AR 259-260); and (5) a May 14, 2010 physical examination by Dr. Gaal showing no guarding or rigidity of the abdomen, bowel sounds present in all

(contin.)

denied plaintiff's appeal on June 9, 2010, explaining that
plaintiff's "medical documentation [did] not support
restrictions and limitations, which would preclude [her] from
working at a medium strength job."  (AR 231-232).

### 2.   Second Appeal

On June 15, 2010, plaintiff requested an additional
review of the denial.  (AR 452).  She advised Mutual that she
had just undergone nerve block treatments at the Cleveland
Clinic, and that Mutual should obtain and review these
additional records.  (Id.).  These records included treatment
notes from the Cleveland Clinic for June 2010.  Specifically, a
June 2, 2010 office visit note from Dr. Ahmed Kandei at the
Cleveland Clinic recommended scheduling the plaintiff for a
differential epidural block (AR 197-201).  Plaintiff underwent
this procedure on June 4, and in a note from Dr. Sean K. Graham,
the results of the block "suggest[ed] somatic pain." (AR 191-
194).

---

four quadrants, 5/5 motor strength in plaintiff's upper and
lower extremities and normal gait.  (AR 251).

11

Mutual obliged, obtained the records and conducted a third review.[9]  The second appeal was reviewed by Beth Beumer-Anderson, RN MSA.  (AR 461).[10]  In this review, Beumer-Anderson noted that despite plaintiff's complaints of abdominal pain during recent doctor visits, she had full range of motion in her extremities and a normal gait.  (AR 462).  Beumer-Anderson also explained that "although [plaintiff] may have self-reported and perceived abdominal pain, it has had no adverse effect on her functional status, other than her reported inability to work." (Id.).  Consequently, Mutual notified plaintiff of its denial of her second appeal through a letter dated August 11, 2010.  This suit followed.

II.

A.   Governing Standard

The court notes initially that it is the claimant's burden to demonstrate entitlement to benefits under the Plan. Ruttenberg v. U.S. Life Ins. Co., 413 F.3d 652, 663 (7th Cir.

---

[9] Mutual notes that the second appeal, or third time it reviewed plaintiff's medical records, was undertaken as a "courtesy."  (AR 184).  The Plan does not maintain a claimant's right to more than one appeal of an initial claim decision.

[10] See supra note 7.

2005) (cited in Donnell v. Metro. Life Ins. Co., 165 Fed. Appx. 288, 296 n.9 (4th Cir. 2006)); see Stanford v. Cont'l Cas. Co., 514 F.3d 354, 364 (4th Cir. 2008) (Wilkinson, J., dissenting) (quoting Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 270 (4th Cir. 2002), as providing that "claimants bear the burden of proving disability.").

The standard of review for a decision made by an administrator of an ERISA benefit plan generally is de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Bynum v. Cigna Healthcare of N.C., Inc., 287 F.3d 305, 311 (4th Cir. 2002); Richards v. UMWA Health & Ret. Fund, 895 F.2d 133, 135 (4th Cir. 1989); de Nobel v. Vitro Corp., 885 F.2d 1180, 1186 (4th Cir. 1989).  Where the plan gives the administrator discretion to determine benefit eligibility or to construe plan terms, however, the standard of review is whether the administrator abused its discretion.  Firestone, 489 U.S. at 111; Stup v. Unum Life Ins. Co. of Am., 390 F.3d 301, 307 (4th Cir. 2004); Bynum, 287 F.3d at 311.

Under this standard, a plan administrator's decision will not be disturbed if it is reasonable, even if the reviewing court would have come to a different conclusion independently. See Smith v. Cont'l Cas. Co., 369 F.3d 412, 417 (4th Cir. 2004); Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th Cir.

13

2000).  "[A] decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."  Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997) (internal quotation marks omitted).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  DuPerry v. Life Ins. Co. of N. Am., 632 F.3d 860, 869 (4th Cir. 2011) (citation omitted).

In Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008), the Supreme Court discussed how a court conducts the review of a benefits determination when the plan administrator operated under a conflict of interest, as concluded here.  Our court of appeals previously accounted for a conflict of interest by way of the modified abuse of discretion standard.  See, e.g., Carden v. Aetna Life Ins. Co., 559 F.3d 256, 259-61 (2009); Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 358 (4th Cir. 2008). Following Glenn, however, "a conflict of interest becomes just one of the 'several different, often case-specific, factors' to be weighed together in determining whether the administrator abused its discretion."  Carden, 559 F.3d at 261 (quoting Glenn, 554 U.S. at 116).  The weight accorded to the conflict "will . . . depend largely on the plan's language and on consideration of other relevant factors."  Id. at 261.

14

A nonexclusive recitation of those "other relevant factors" is found in <u>Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan</u>, 201 F.3d 335 (4th Cir. 2000), which directs a reviewing court to consider:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

<u>Booth</u>, 201 F.3d at 342-43; <u>Johannssen v. Dist. No. 1-Pacific Coast Dist., MEBA Pension Plan</u>, 292 F.3d 159, 176 (4th Cir. 2002); <u>see also Lockhart v. UMWA 1974 Pension Trust</u>, 5 F.3d 74, 77 (4th Cir. 1993).

There are compelling reasons for the deferential standard of review, not the least of which is that it "'ensure[s] that administrative responsibility rests with those whose experience is daily and continual, not with judges whose exposure is episodic and occasional.'" <u>Brogan v. Holland</u>, 105 F.3d 158, 164 (4th Cir. 1997) (quoting <u>Berry v. Ciba-Geigy Corp.</u>, 761 F.2d 1003, 1006 (4th Cir. 1985); <u>see also Brogan</u>, 105 F.3d at 161 (noting no abuse is present if the decision "'is the

result of a deliberate, principled reasoning process and if it
is supported by substantial evidence'") (citations omitted);
<u>Johannssen</u>, 292 F.3d at 169; <u>Lockhart</u>, 5 F.3d at 77 (noting the
"dispositive principle remains . . . that where plan fiduciaries
have offered a reasonable interpretation of disputed provisions,
courts may not replace it with an interpretation of their own").

　　　　　Nevertheless, there are circumstances where a
reviewing court will direct an administrator to reexamine a
claim through the device of remand.  The circumstances
justifying a remand, however, are quite exceptional:

> If the court believes the administrator lacked
> adequate evidence on which to base a decision, "the
> proper course [is] to 'remand to the trustees for a
> new determination,' not to bring additional evidence
> before the district court."  As we have previously
> indicated, however, "remand should be used sparingly."
> Remand is most appropriate "where the plan itself
> commits the trustees to consider relevant information
> which they failed to consider or where [the] decision
> involves 'records that were readily available and
> records that trustees had agreed that they would
> verify.'"  The district court may also exercise its
> discretion to remand a claim "where there are multiple
> issues and little evidentiary record to review."

<u>Elliott v. Sara Lee Corp.</u>, 190 F.3d 601, 609 (emphasis added)
(citations and quoted authority omitted); <u>Sheppard</u>, 32 F.3d at
125; <u>Weaver v. Phoenix Home Life Mut. Ins. Co.</u>, 990 F.2d at 159
(4th Cir. 1993); <u>Berry v. Ciba-Geigy Corp.</u>, 761 F.2d 1003, 1008
(4th Cir. 1985) ("Case for remand of benefit termination
decision to pension plan trustees is strongest where plan itself

commits trustees to consider relevant information which they failed to consider or where decision involved records that were readily available and records that trustees had agreed that they would verify.").

B.  Analysis

Four considerations are worth noting at the outset. First, the Plan imposed upon plaintiff the burden of establishing her entitlement to benefits.  (AR 35).  Second, as plaintiff readily concedes, Mutual is vested with discretionary authority under the Plan to determine if a claimant has adequately proven disability.  (See Pl.'s Mem. at 6).[11] Consequently, the court is guided by an abuse of discretion standard in reviewing the denial of plaintiff's claim.  See Bynum, 287 F.3d at 311.  Third, Mutual qualifies as a conflicted administrator inasmuch as it serves as both (1) the Plan insurer responsible for the payment of benefits, and (2) the arbiter concerning whether a participant meets the Plan's criteria for establishing a compensable disability.  Finally, the court observes that cases such as this "fall[] into that difficult class of ERISA disability cases involving subjective complaints of pain as a primary cause and driver of the insured's claim of

_____

[11] See supra note 1 and accompanying text.

disability." <u>DuPerry</u>, 632 F.3d at 867-868 (quoting <u>DuPerry v.
Life Ins. Co. of N. Am.</u>, No. 5:08-cv-344, slip op. at 18
(E.D.N.C. August 10, 2009)).  Acknowledging that the potential
for abuse by both claimants and plan administrators is a genuine
concern in such cases, the court now turns to its analysis.

### 1.    The Language of the Plan

        With respect to <u>Booth</u>, the parties' dispute centers
around the first, fifth, sixth, and eighth factors.  Regarding
the first factor, plaintiff contends that Mutual misapplied Plan
language chiefly with respect to the requirement that plaintiff
provide to Mutual proof of the cause of her disability.  As
noted above, a claimant must provide written proof of loss with
respect to, <u>inter alia</u>, the "cause of . . . disability." (AR
35).  Plaintiff does not dispute the need to supply this kind of
information, but rather argues that Mutual's interpretation of
the requirement is too exacting.  To plaintiff, the cause of her
disability was simply debilitating abdominal pain.  For its
part, Mutual asserts that the proof of cause requirement obliges
plaintiff to provide information demonstrating the source of the
disabling condition itself, namely, the abdominal pain.  "Making
such an inquiry," defendant rejoins, "is precisely what a
reasonable fiduciary would do, especially given the paucity of

record evidence allegedly supporting disability."  (Def.'s Reply
at 1).  Mutual argues that plaintiff's claim

> fails on a wholesale level because she has not
> provided any medical evidence – just her own self-
> reported, subjective symptoms – that shows that she
> suffers from any "disease," "disorder," or "condition"
> that has caused a "significant change" in her
> "physical functional capacity" so as to prevent her
> from performing the duties of her regular occupation
> at Wendy's.

(Def.'s Reply at 2 (quoting AR 46)).

       In a similar vein, plaintiff argues that the Plan does
not require plaintiff to produce "objective" medical evidence
with respect to the cause of her alleged disability.  Plaintiff
points to a list of documented complaints of abdominal pain made
to medical professionals over the course of several years.  To
be sure, the Plan does not explicitly require a claimant to
supply "objective" medical proof to make out a successful claim.
But the record neither indicates, nor does plaintiff assert,
that Mutual ignored her complaints of pain or based its decision
solely on plaintiff's failure to produce objective evidence.[12]

---

[12] Plaintiff compares her case to Perryman v. Provident Life
and Accident Ins. Co., 690 F. Supp. 2d 917, 943 n.9 (D. Ariz.
2010).  There, the court found that the claimant "cannot be
denied benefits merely based on any failure on her part to
produce objective medical evidence of the etiology of her
[disabling condition] because [the insurer's] policy has no such
requirement."  Id. (emphasis added).

(contin.)

19

The record shows that Mutual reviewed each document submitted by plaintiff, including physician notes indicating plaintiff's reoccurring complaints of abdominal pain.  (<u>See, e.g.</u>, AR 465-467).

While the word "objective" does not appear in the Plan, it is not unreasonable for Mutual to find a dearth of such data indicative of a lack of genuine proof of disability.  Faced with somewhat similar circumstances, Chief Judge Haden has aptly reasoned:

---

Accepting this proposition <u>arguendo</u>, it is not applicable inasmuch as the record does not indicate Mutual based its determination "merely" on plaintiff's failure to produce objective evidence.  As explained, Mutual's decision was based on a fully-developed record, including both objective and subjective evidence.  <u>Perryman</u>, in fact, supports Mutual's view. While admitting that it must consider the claimant's subjective complaints of pain as part of its review,

> [t]he Court is not, however, required to blindly accept [the claimant's] subjective reports of disabling fatigue and related symptoms.  Because the Court concludes that it is entirely appropriate to require that [the claimant] meet her burden of establishing that she is disabled by providing sufficient objective evidence of her functional limitations or restrictions that render her disabled from working, [the claimant's] subjective evidence is persuasive only to the extent it is corroborated by other evidence of medically documented impairments showing that she has functional limitations or restrictions that render her disabled from working.

<u>Id.</u>

20

> Were an opposite rule to apply, [disability benefits]
> would be payable to any participant with subjective
> and effervescent symptomology simply because the
> symptoms were first passed through the intermediate
> step of self-reporting to a medical professional.  If
> that were so, defendant[] would be greatly hampered in
> exercising [its] fiduciary role of carefully
> scrutinizing self-reporting, preventing malingering,
> and consequently "guard[ing] the assets of the trust
> from improper claims, as well as . . . paying
> legitimate claims."

Coffman v. Metro. Life Ins., 217 F. Supp. 2d 715, 732 (S.D.W.

Va. 2002), aff'd, 77 Fed. Appx. 174 (4th Cir. 2003) (quoting

Brogan v. Holland, 105 F.3d 158, 164 (4th Cir. 1997)). See also

Lown v. Cont'l Cas. Co., 238 F.3d 543, 546-547, 549 (4th Cir.

2001) (upholding on de novo review denial of benefits against

opinions of three treating physicians where insurer "determined

that [the claimant's] documentation was inadequate to prove a

total disability because of the lack of test results or other

objective evidence to support the disability"); Doyle v. Liberty

Life Assurance Co. of Boston, 542 F.3d 1352, 1362-63 (11th Cir.

2008) ("We do not believe . . . that [the administrator's]

preference for medical opinions grounded in objective medical

evidence is somehow indicative that its decision was

unreasonable. . . ."); Parkman v. Prudential Ins. Co. of Am.,

439 F.3d 767, 773 (8th Cir. 2006) ("It is not unreasonable for a

plan administrator to deny benefits based upon a lack of

objective evidence.").

Compelling Mutual to accept plaintiff's less demanding view of the Plan's proof requirements -- while also insisting that Mutual accept her subjective complaints unaccompanied by corroborating objective proof -- would undermine Mutual's role as fiduciary and plan administrator.  Wholly apart from the Plan's directive according Mutual sole authority over its interpretation, the Plan's plain language and purpose, as well as the understanding of Mutual's role as fiduciary, counsel in favor of defendant's sensible interpretation.[13]  Simply put, Mutual did not abuse its discretion in finding that plaintiff failed under the terms of the Plan to provide sufficient evidence explaining both the cause of her disabling condition and how the condition rendered her unable to perform the material duties of her occupation.

### 2.  A Reasoned and Principled Decisionmaking Process

Turning to the fifth <u>Booth</u> factor, plaintiff alleges that Mutual's claim decision was not reasonable inasmuch as the medical evidence weighs convincingly against a denial of STD

---

[13] Plaintiff also appears to argue in conclusory fashion that defendant misapplied the term "sickness" with respect to the definition of "disability."  Inasmuch as this position is essentially the same as her claim that Mutual failed to adequately weigh her subjective complaints of pain, it is addressed under the fifth <u>Booth</u> factor.

benefits.  (Pl.'s Mem. 8).  Supporting this view, plaintiff
notes that she has been under the care of multiple physicians
for severe abdominal pain, a condition which has allegedly led
to a significant change in her functional capacity.  Plaintiff
supports her claim by pointing, primarily, to self-reported
claims made through various physicians over the period of
several years.  Defendant counters that Mutual's decisionmaking
process considered all the available medical documentation.

    According to Booth, "it is not an abuse of discretion
for a plan fiduciary to deny . . . benefits where conflicting
medical reports are presented."  Elliot v. Sara Lee Corp., 190
F.3d 601, 606 (4th Cir. 1999).  Moreover, plan administrators
are not required to give special weight to the opinions of
treating physicians over other credible opinions and records.
See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834
(2003).  When reviewing decisions of plan administrators,
district courts "have no warrant to require administrators
automatically to accord special weight to the opinions of
claimant's physician; nor may courts impose on plan
administrators a discrete burden of explanation when they credit
reliable evidence that conflicts with a treating physician's
evaluation."  Id.  Nonetheless, the court cautioned that "[p]lan
administrators, of course, may not arbitrarily refuse to credit

23

a claimant's reliable evidence, including the opinions of a treating physician."  Id.

Here, Mutual did not arbitrarily reject the opinion of plaintiff's primary treating physician, Dr. Gaal.  In fact, Mutual had reason to believe that Dr. Gaal's conclusions regarding plaintiff's ability to work rested in large part on her subjective complaints of pain, the credibility of which is substantially undermined by the remainder of the record.  As noted above, Dr. Gaal reported on December 31, 2009, that plaintiff was "not in any acute distress" and had a "pleasant affect."  (AR 374).  Moreover, Dr. Gaal stated that plaintiff had no neurological deficits, full range of motion of the neck, no tenderness to palpation of the cervical, dorsal, or lumbosacral spine area, and exhibited a normal gait.  (AR 374). In what may have indicated his uncertainty as to the source of plaintiff's reported condition, Dr. Gaal recommended that plaintiff seek a "second opinion as far as chronic abdominal pain is concerned."  (AR 375).

The allegation that Mutual failed to conduct a reasoned and principled decisionmaking process is simply not well-founded.  To the contrary, plaintiff's multiple diagnostic workups from late 2009 into 2010 resulted in essentially "unremarkable" objective findings.  (AR 85, 106, 262, 358).

24

This additional treatment included a referral for a second opinion by Dr. Gaal to Dr. R. Edward Hamrick. (AR 321). Like Dr. Gaal, Dr. Hamrick diagnosed plaintiff with abdominal pain, as she reported, but was unable to ascertain its cause. Records further indicate that Dr. Hamrick found no gastrointestinal abnormalities following a workup, and "doubt[ed]" that plaintiff would benefit from exploratory surgery. (AR 273). For treatment, Dr. Hamrick recommended that plaintiff consider an appointment at the Cleveland Clinic -- an appointment that ultimately yielded little in the way of conclusive objective findings. (AR 191-194; 273).[14]

        As the record shows, each time plaintiff reported complaints of abdominal pain to a physician, including her primary physician, the resulting objective findings neither substantiated her complaints nor provided a basis for further

---

[14] In response, plaintiff points to the differential epidural nerve block treatment she received at the Cleveland Clinic. This is a procedure in which "an anesthetic agent is injected directly near a nerve to block pain." (AR 462). According to relevant records, plaintiff responded positively to the nerve block treatments, but only for a short period. (AR 191-194). While Dr. Graham concluded that the results "suggest somatic pain," there is no indication that Mutual ignored this particular finding. (Id.). Indeed, Mutual reviewer Beth Beumer-Anderson, RN MSA, acknowledged these finding in her report, but otherwise observed that "the examinations from the Cleveland Clinic note that plaintiff has 'full [range of motion] of her extremities and her gait is normal.'" (AR 462).

treatment.  In sum, Mutual supported its disability
determination with adequate materials, both in number and
quality.  See Booth, 201 F.3d at 342-43 (listing as one factor
of reasonableness the "adequacy of the materials considered to
make the [disability] decision and the degree to which they
support it").  To the extent that Mutual relied upon a
comprehensive and well-developed record, its decisionmaking
process was reasonable and principled.

Moreover, Mutual's willingness to reconsider the
findings of prior reviews -- specifically, when it conducted a
second appeal where only one was granted to plaintiff by right
-- indicates Mutual's diligence and courtesy with respect to
plaintiff's claim.  Plaintiff is left pressing the bald
conclusion that Mutual's decision was unreasonable and
unsupported by substantial evidence.  Upon review for abuse of
discretion, the court finds that it was neither.

3.    The Procedural and Substantive Requirements of ERISA

Turning to the sixth Booth factor, plaintiff accuses
Mutual of a "serious procedural irregularity and abuse of
discretion" for assigning the task of reviewing plaintiff's
appeals to registered nurses rather than physicians. (Pl.'s
Reply 8).  ERISA regulations provide that "in deciding an appeal

26

of any adverse benefit determination <u>that is based in whole or in part on a medical judgment</u>, . . . the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment."  29 C.F.R. § 2560.503-1(h)(3)(iii) (emphasis added).  The Plan's language contains the same provision. (AR 39).

In plaintiff's view, the nurses who conducted the two appeals -- Rosenstock, who reviewed plaintiff's first appeal, and Beumer-Anderson, who reviewed the second -- did not consult any health care professional in their respective decisionmaking processes.  She further contends that the record does not indicate that "any of the . . . reviewing nurses themselves had any training or expertise . . . in the fields of medicine involved in the medical judgments made regarding plaintiff's claim for benefits."  (Pl.'s Reply 5).  In response, defendant aptly observes that nurses, like physicians, are themselves "health care professionals" under the language of the Plan and ERISA regulations, and that nothing in either of these sources of authority states that "a nurse is not sufficient to review a claim for benefits, or that the 'health care professional' at issue must be a physician."  (Def.'s Reply 12).

In any event, review by a medical professional is not necessary unless the benefit determination is based in whole or in part on a "medical judgment." § 2560.503-1(h)(3)(iii). As the record indicates, Mutual did not question the physicians' diagnoses of abdominal pain or their attempts at identifying its cause. By only reviewing the medical determinations rather than making new or different medical findings, Mutual did not make a judgment as to plaintiff's medical condition. <u>See, e.g.</u>, <u>Stanford v. Cont'l Cas. Co.</u>, 455 F. Supp. 2d 438, 445 (E.D.N.C. 2006) (finding that defendant did not violate § 2560.503-1(h)(3)(iii) inasmuch as "defendant has never questioned the findings of plaintiff's treatment providers," and it was clear "that at all times, defendant's only question has been whether, under the terms of the policy, those findings constitute disability"). Inasmuch as Mutual's denial determinations were based on a review of the objective medical records and plaintiff's vocational limitations and not <u>medical</u> judgments with respect to plaintiff's condition, Mutual did not run afoul of § 2560.503-1(h)(3)(iii) and the related Plan language. Accordingly, the court finds that it was not an abuse of discretion for Mutual to have utilized its own registered nurses in twice reviewing plaintiff's case.

Had the nurses who reviewed plaintiff's two appeals made one or more medical judgments so as to place Mutual under the requirements of § 2560.503-1(h)(3)(iii), plaintiff points to no authority that would require Mutual to assign plaintiff's appeals only to physicians. The relevant definition provides that "[t]he term 'health care professional' means a physician or <u>other health care professional</u> licensed, accredited, or certified to perform specified health services consistent with State law." § 2560.503-1(m)(7) (emphasis added). The language used manifests a broad intent to encompass health care personnel such as registered nurses, and no evidence suggests that the nurses who reviewed plaintiff's appeals were unlicensed or otherwise unqualified under state law. While plaintiff argues that they did not possess the "appropriate training and experience in the field of medicine involved in the medical judgment . . . ." (AR 39), plaintiff identifies no facts to support this contention.

Plaintiff also appears to argue that Mutual should have conducted an <u>independent</u> medical examination of her inasmuch as it had the right to do so under the Plan. Plaintiff points to no authority in support of this charge. Inasmuch as it has been recognized that "there is no <u>per se</u> rule in the law requiring that a plan administrator must conduct an independent

29

medical examination before denying benefits," plaintiff's claim is without merit.  Piepenhagen v. Old Dominion Freight Line, Inc., 640 F. Supp. 2d 778, 792 (W.D. Va. 2009) aff'd 395 F. App'x. 950 (4th Cir. 2010); see also Laser v. Provident Life & Accident Ins. Co., 211 F. Supp. 2d 645, 650 (D. Md. 2002) (observing that independent reviews of medical evidence and independent examinations are not required).

### 4.  The Fiduciary's Motives and Conflict of Interest

Finally, regarding the eighth Booth factor, the court has noted that a conflict of interest is present.  Mutual's denial of plaintiff's benefits does not appear to have been influenced by this conflict, as the record supports Mutual's decision that plaintiff failed to satisfy the Plan's definition of disability.  Plaintiff further argues that Mutual had a financial incentive to deny her further STD benefits so as to prevent plaintiff from becoming eligible for long term disability benefits.  (Pl.'s Reply 2-3).  Her argument is not well-taken.

First, as noted above, Mutual went beyond what the Plan required when it considered a second, courtesy appeal of her claim in order to obtain and assess additional medical records that plaintiff believed supported her claim.  (AR 225).

This additional, voluntary review on Mutual's part increased the likelihood of an accurate final decision and removes any concern that Mutual was somehow trying to prematurely close the record. See Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 362 (4th Cir. 2008) ("This second appeal, which was not required by the Plan language, increased the likelihood of an accurate final decision, thereby also reducing the conflict factor 'to the vanishing point'. (quoting Glenn, 554 U.S. at 117)).

Beyond the second appeal, it is noteworthy that each review was undertaken systematically and by a different reviewer each time. Inasmuch as plaintiff presses the argument that Mutual's reviewers were unfairly biased because they maintained an interest in producing an opinion unfavorable to her, the same may be said for plaintiff's primary treating physician in that he may have had an interest in producing a favorable opinion and retaining plaintiff as a patient. Finally, plaintiff presents no factual or legal support for the accusation that Mutual cut off plaintiff's STD benefits so it could avoid paying her long term disability benefits on a future date. On balance, Mutual's actions do not indicate that its decisions were tainted by its status as a conflicted administrator.

For the above reasons, Mutual's decision to deny plaintiff's claim for disability benefits was reasoned and

principled.  Plaintiff has failed to demonstrate an abuse of discretion.

III.

Based on the foregoing discussion, it is ORDERED as follows:

1. That plaintiff's motion for summary judgment be, and it hereby is, denied;

2. That defendant's motion for summary judgment be, and it hereby is, granted; and

3. That this action be, and it hereby is, dismissed.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

Dated: November 22, 2011

John T. Copenhaver, Jr.
United States District Judge